## T. B. Peart v. The State.

### No. 8337.   Decided June 18, 1924.

### Rehearing denied October 29, 1924.

1.—Murder—Transcript on Appeal—Order of its Arrangement.

Great labor as well as time lost is imposed upon this court by failure of clerks of trial courts to prepare transcripts in accordance with rule 85 of the rules for district and county courts, prescribed by the Supreme Court and contained in Vol. 142 S. W. Reporter. The attention of trial judges, and clerks of their courts is called to this rule, and they are urged to follow literally and carefully said rule in preparation of their transcripts of cases appealed.

2.—Same—Manslaughter—Charge of the Court—Not Raised by Evidence.

The issue of manslaughter should not be submitted by the court unless it is raised by the evidence. To constitute adequate cause an insult to a female relative of statutory relationship as of the wife, the insult must be given while the relationship exists, and the killing must occur at the first meeting of the parties, and while the relationship also exists. That is, a homicide cannot be reduced to manslaughter where the killing is claimed to have been due to an insult offered to a man's former wife, who was at the time of the supposed insult divorced from him, nor would a homicide be reduced to manslaughter due to an insult to a man's wife, who was his wife when the insult was offered but who was divorced from him at the time of the killing, which must of course occur at first meeting. See Ex parte Jones, 31 Tex. Crim. Rep., 446.

3.—Same—Manslaughter—Charge—Erroneously Submitted.

Where the trial court erroneously submits the issue of manslaughter, bills of exception of appellant presenting various proceedings predicated on the proposition that manslaughter was rightfully in the case, will not be considered.

4.—Same—Bills of Exception—Not Considered—Question and Answer form.

Where bills of exception are prepared in question and answer form, or where they fail to set out the surroundings or settings of the matter objected to so as to make the bill intelligible they will not be considered.

5.—Same—Charge of the Court—Exceptions to.

Where the court, in response to an exception taken to a paragraph, changes that paragraph of charge before submitting same to jury, and no further exception is taken to it, nothing is presented to this court for review. If charge when changed in response to objections is not satisfactory, appellant should present further exceptions to it.

**6.—Same—Charge of Court—Burden of Proof.**

Court properly refused a special charge of appellant to the effect that the burden of proof is upon the state to prove that defendant did not act in self-defense in killing deceased.

ON MOTION FOR REHEARING.

**7.—Same—Manslaughter—Charge of Court.**

There is no evidence in this case that raises the issue of any insult to appellant's daughter by deceased. The fact, that appellant claimed that the deceased was trying to seduce his daughter, unsupported by any act or conduct on his part evidencing such a purpose, would not create the issue of manslaughter and the court properly refused to submit such issue to the jury.

**8.—Same—Application for Continuance—Bill of Exception.**

When an application for a continuance is refused by the court, a bill of exception should be reserved, and perfected. The notation of that fact made on the court's docket is not sufficient, to present the matter to this court for review. See page 183 of Branch's annotated penal code, and cases there cited.

Appeal from the District Court of Jefferson County. Tried below before the Hon. Geo. C. O'Brien, Judge.

Appeal from a conviction of murder; penalty, ninety-nine years confinement in the State penitentiary.

*Howth & O'Fiel* and *Lamar & Hart,* for appellant.

*Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Jefferson County of murder, and a penalty of ninety-nine years in the penitentiary affixed.

This court has a tremendous amount of work and the ignoring of the rules laid down in the preparation of transcripts, and a failure to place the various documents composing same in the orderly manner prescribed by rule 85 of the Rules for District and County Courts prescribed by the Supreme Court and contained in volume 142 S. W. Rep., greatly multiplies the labor of this court. The transcript in this case does not follow the rule referred to in any particular. The motion for continuance is near the end of the transcript, and the charge of the court is about the middle thereof. There is little excuse for confusing transcripts which, when as long as the one in this record, adds enormously to the burdens which already greatly taxed the powers of this court. Attention is called to this because there seems a growing tendency to carelessness in this regard, and it is hoped that those charged with the duty of preparing transcripts will carefully follow the order prescribed in the rule mentioned.

Appellant and his wife lived together for a number of years, one child, a daughter, being born to their union. Some fifteen months before this homicide appellant's wife procured a divorce from him. The daughter was either then married or shortly thereafter did marry. Deceased, who was a widower, seems to have been paying attention to appellant's wife at the time of the homicide, and some two weeks before same the daughter of appellant communicated to him the fact that her mother and deceased were engaged to be married. At the time of the homicide deceased was walking along a public street in Port Arthur with the woman to whom he was engaged, the former wife of appellant, when the latter appeared, and, according to the State's testimony, began firing a pistol at deceased who was eating an ice-cream cone, and continued firing until deceased fell. Appellant claimed justification for his acts upon the ground of self-defense, and also asserted that he could be guilty of no greater offense than manslaughter because of the fact that he had been told in December of 1922 that before his wife was divorced she had been seen to get into a car with deceased and drive away; also upon the further proposition that he himself had seen deceased drive up to the home of his daughter at some date not mentioned, it being said that he thought deceased intended to seduce said daughter. The latter fact could not be relied on legally as supporting manslaughter, for the reason that it occurred in the presence of appellant who did not then resent it or attempt to inflict injury upon deceased. Article 1133 of our Penal Code provides that in order to reduce a homicide to manslaughter because of insulting conduct toward a female relative, it must appear that the killing took place immediately upon the happening of the insulting conduct, * * * or so soon thereafter as the parties meet, etc. As setting out our view of this contention when the conduct takes place in the presence of the accused, see Henderson v. State, 229 S. W. Rep., 537, and authorities there cited.

Nor could appellant rely on what he claimed to be insulting conduct of deceased toward his wife which occurred prior to her divorce from him, but which he asserts was not communicated to him until after said divorce was granted. As decisive of this question we quote from Ex parte Jones, 31 Texas Crim. Rep., 446:

"Upon the first ground, we hold that article 601 of the Penal Code is to be construed with Article 597. That is to say, the insult must be given to the female while under the protection of the slayer, and the killing must also be done while she is under his protection. The difference between the cases of an actual relation and the statutory relationship of protection is, that while in both cases the insult must be given while the relationship exists, the killing must occur at the first meeting in the case of the actual relative, and in the statutory relationship it must occur during the existence of the relationship; for if the

female so insulted leaves the protection of the slayer before the first meeting with the one insulting her occurs, the right to act is gone. The proposition that one has a right to avenge the wrongs of any female he may take under his protection, without regard to the time the injury was done, is without force or merit; for, apart from the disastrous consequence of such a construction, the insult would not, in fact, have been offered to a female relation, which must be shown before the statute can be invoked."

We know of no authority holding a different doctrine and think the reasoning of the court apt and sound in said opinion.

What we have just said renders it needless for us to discuss the numerous bills of exception appearing in this record complaining of various proceedings referring to or predicated on the proposition that manslaughter was rightfully in the case based on the ground or the other above discussed.

Bills of exception Nos. 11 and 12 are in question and answer form and cannot be considered. Bill of exceptions No. 13 presents none of the surrounding or setting of the matter objected to and brings nothing before us for review. Bill No. 14 is qualified by the statement, which is in nowise disputed, that no exception was reserved by the matter complained of. Bills 15, 16, 17, 19, 21, 22 and 24 relate to various phases of the question of manslaughter growing out of the insulting conduct of deceased toward the wife or daughter, which question is not properly in the case as we have above indicated, and for which reason said bills will not be discussed.

Bill No. 18 complains of the ruling of the court upon the exceptions to the charge. Paragraph 11 of the charge was changed after the exception was taken, and thereafter no exception was reserved. The court's charge as it appears in the record fully instructs the jury to apply the reasonable doubt as between the grades of homicide, and there seems nothing in this exception, if there be two grades in this case. The remaining exceptions to the charge are directed at the court's manner of submitting manslaughter predicated on insulting conduct, and as we view it said charges were wholly uncalled for and we therefore will not review complaints of their form.

The court gave to the jury the law of the presumption of innocence and applied the doctrine of reasonable doubt to the entire case, and also in many parts of the charge made particular application of said doctrine to specific matters submitted. We think it not incumbent on the court to give special charges which contained, among other things, the following:

"I further charge you in this connection that the burden is upon the State to prove to your satisfaction beyond a reasonable doubt, that the defendant did not act in self-defense against either real dan-

ger, or against what appeared to him to be danger, and if the State has not met this burden you will say by your verdict not guilty."

Refusal to give this is complained of by bills of exception Nos. 20 and 23.·

Bills of exception Nos. A, B, C, D, E, F and FA are to matters pertaining to the motion for new trial and argument made by the State. These bills are lengthy as are the qualifications of the trial court appended to each. The motion for new trial was not sworn to, nor was it accompanied by affidavits relating to any of the extraneous matters set up. The motion as to ˜each of these matters was controverted by the State's attorney under oath. The qualifications appended by the learned trial judge to the bills seem to have been accepted by the appellant. In the light of such facts and the qualifications, we deem the bills to present no error.

An application was made for a continuance but its refusal was not made the· subject of any bill of exceptions and it is too well settled to need citation of authorities that in such case this court will not consider a complaint of the refusal ·of such application.

We have carefully considered the entire record, and finding no error, an affirmance will be ordered.

*Affirmed.*

ON REHEARING.

LATTIMORE, Judge.—If we comprehend appellant's original and supplemental motions for rehearing, he insists that the record showed facts amounting to insulting conduct by deceased toward the daughter of appellant; and that the trial court should have told the jury specifically that insulting conduct toward a female relative would be adequate cause to create passion which, if it brought about˙ the killing, would reduce same to manslaughter. Also that we erred in holding that if there was insulting conduct toward said daughter it occurred in the presence of appellant, and not being then resented by˙ him,.this in law was the first meeting and he could not thereafter successfully base˙ manslaughter passion ·on what then occurred.

We have sifted the record in the light of these contentions. Appellant asserts that his first knowledge of what he now claims to have been the wrong conduct of deceased with his former wife, was what Bill Malanson told him in December, 1922, before this killing in May, 1923. He testified: "I positively did not hear anything about these matters, or believe anything about them until Malanson told me." He also said, "I talked to that man * * * and I killed Poteet on the 7th of May."

What did Malanson tell appellant in December, 1922? We quote from his testimony:

"He told me that when I came out of Louisiana one night that Mrs. Peart was getting in a car with Mr. Poteet, and that Mrs. Peart thought that I saw her and she didn't like it because I acted indifferent about it. As a matter of fact, it was nearly dusk, and I saw some one get in the car, but I couldn't swear who it was, and I didn't know who it was; and then he went on to tell me. v. Without going into details, I will just ask you this general question: Did you learn about these matters on this occasion? A. I did."

There is no other word of testimony as to what Malanson told him. But he says that shortly before his conversation with Malanson he visited his daughter at Port Arthur and soon after he got there at a little after 9:00 A. M. deceased drove up in a car and started to get out, but his daughter called to him and said, "Papa is here," and she went out to the car and spoke a few words to deceased and he then drove off, giving a friendly wave of his hand to the daughter as he did so. This is the insulting conduct relied on by appellant as far as his daughter is concerned, and he says this visit to his daughter was also in December. We quote his testimony again:

"At the time Poteet drove up in a car and I was there, my daughter was married then. I couldn't give you the day of the week and the month and the year that that occurred, definitely; it was sometime in December but I don't know what time; sometime in December, 1922."

A little further on in appellant's testimony appears the following:

"On that occasion naturally I made the statement to her that Poteet was a home wrecker, and she said that I was only jealous, and I told her I positively was not."

And again:

"As to whether I thought Poteet was coming there to see her, he didn't have any business coming there, Mr. Scurlock. At that's time, I told her Poteet was nothing but a home wrecker. I did not say anything to her about Poteet coming to see her, and she never said anything about Poteet coming to see her."

If then appellant knew and believed nothing against his wife and deceased until after he talked to Malanson, it would appear a little strange that he knew and believed deceased to be a home wrecker and so stated to his daughter when he saw deceased in front of her house on the morning of the alleged misconduct. What then? We quote further from his testimony:

"I saw him drive up there before Malanson told me this, and then after Malanson told me this, due to the fact that he did drive up there when Mrs. Peart was away in Louisiana. No, I didn't see him, after Malanson told me she got in the car with Mr. Poteet. Malan-

son told me that in December, 1922. I saw him drive up to my daughter's, some time shortly after that. I wouldn't be positive whether it was after he told me he saw my wife get in Poteet's car or before that that he drove up to my daughter's house in Port Arthur; but I know that he drove up there."

The conduct of deceased in driving up in front of the home of the daughter of appellant, as above referred to, is the only act of deceased upon which could rest any claim that deceased was guilty of insulting conduct toward her. The fact, as testified to by appellant, that a man told him a few days before the homicide deceased said to a group of men on the street that he would have to leave them as he had to go and look after (using a vulgar word), the inference being that he was going to have intercourse with some woman, in which utterance the deceased by no word, act or expression suggested any particular woman,—seems wholly irrelevant to this contention of appellant.

We think the facts do not call for the submission of the law of manslaughter as affirmed in our original opinion, and that appellant did meet deceased at his daughter's home after he had information and believed him to be a home wrecker, and that he did not then attack deceased at this first meeting after learning of the fact, as asserted in his own testimony, that deceased had wrecked his home; but if we be not correct in this, then we are further of opinion that the charge of the trial court, which gave the jury the right to acquit him of murder and to convict only of manslaughter if they found appellant's mind to be so inflamed by passion arising from any adequate cause as to render him incapable of cool reflection at the time of the homicide,—was favorable to appellant. This authorized the jury to consider all the testimony that he could produce showing wrong conduct between his former wife and deceased and the communication of this fact to him, and also permitted them to take into consideration the information that his former wife was going to marry deceased, etc.

In reference to the contention of appellant here made that when the court below overruled his application for continuance and notation of that fact was made on the docket, this obviated the necessity for a bill of exceptions properly authenticated by the court complaining of such refusal, we observe that on page 183 of Mr. Branch's Annotated P. C. he cites many authorities holding that docket or judgment entry will not take the place of a bill of exceptions. The propriety of this conclusion finds illustration in the case before us. Among the witnesses for whom the continuance was asked was one Berwick, and it is made to elsewhere appear that Berwick came in and was present at court during this trial but was not used as a witness by the appellant. If this court was bound by the notation

made by the court below upon his docket of an exception, to the overruling of an application for continuance, even though all the witnesses appeared and testified, or appeared and did not testify, the trial court would have no opportunity to make this fact known in his qualification to a bill of exceptions, and appellant would be given the benefit of something to which he was not entitled.

Believing appellant's contentions not tenable, his motion for rehearing will be overruled.

*Overruled.*